STATE OF NORTH CAROLINA v. JIMMY LEE ALLRED

No. COA97-522

(Filed 7 April 1998)

**1. Assault and Battery § 101 (NCI4th)— self-defense— instruction not given—prison fight**

The trial court did not err in an assault prosecution by refusing to instruct the jury on self-defense where defendant stabbed another inmate during a prison fight. Even assuming that defendant did not initiate the fight, the evidence reveals that defendant aggressively and willingly entered the fight, that defendant did not withdraw and that the victim was unarmed. Regardless of who started the altercation, defendant was required to retreat rather than escalate the incident through the use of a weapon.

**2. Assault and Battery § 116 (NCI4th)— assault with a deadly weapon—prison fight—pen or shank—submission of simple assault not required**

The evidence in a prosecution for assault with a deadly weapon arising from a prison fight did not support a jury instruction on the lesser-included offense of simple assault where the evidence undisputedly revealed that the victim received stab wounds during the altercation with defendant. Testimony that another inmate saw only a ballpoint pen did not contradict the State's case that defendant stabbed the victim with a shank made from a ballpoint pen.

**3. Assault and Battery § 28 (NCI4th)— assault with a deadly weapon—prison fight—instructions—weapon described as shank**

The trial court did not err during an assault prosecution arising from prison fight by describing the weapon used by defendant as a "shank, the homemade knife or pen with the razor in it" where the State's evidence of the weapon used by defendant was uncontradicted.

Appeal by defendant from judgment filed 19 December 1996 by Judge Thomas W. Seay, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 14 January 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General Julia R. Hoke, for the State.*

*Donald E. Gillespie, Jr., for defendant appellant.*

GREENE, Judge.

Jimmy Lee Allred (Defendant) appeals from a conviction for assault with a deadly weapon.

On 31 October 1995, an altercation occurred between three inmates of the Guilford County Jail. Christopher Van King (King) testified for the State that he and Defendant began to argue because King and another inmate were talking near the television in the "day room," an area containing two picnic tables, a television, telephones, and a commode. King stated that inmates can leave the day room to "get snacks," and that after he and Defendant argued, Defendant and Robert Foust (Foust) left the day room. King stated that when they returned, Defendant had a "shank," a knife made from "some type of metal razor inserted in a pen, plastic part of a pen." At that point, King testified that "Foust swung at me and knocked my glasses off. As I swung back, [Defendant] stabbed me in the left shoulder [and] the back." King stated that, just before the officers arrived to break up the fight, Defendant flushed the shank down the commode in the day room.

Foust testified for the State, offering the following description of the item used by Defendant to stab King:

Q: And what did [Defendant] use to stab [King]?

[Foust]: A pen. All I saw him use was a pen.

Q: And what did you see about that pen?

[Foust]: All I see, it was a pen. All pens are sharp. I just seen a pen. Whether it was a piece of metal or a piece of anything on it, I didn't see. I seen a ink pen.

Foust continued to state, throughout his testimony, that "all I seen was a pen."

The officer who investigated the incident, Jerry L. Ford (Officer Ford), testified that King stated that he was stabbed by Defendant with a shank, which he described as:

[A] typical pen, a Bic pen or whatever, and they would use a lighter to melt one end of the pen, and once the plastic begins to get softened—a lot of times the inmates have razors to shave with and sometimes the officers don't get 'em back, so when they have one of the razors extra, by the pen being melted, he would just slide that—they would just slide the piece of razor blade to the soft portion of the pen and once the pen got hardened, that's when the blade was stiffening and it wouldn't be able to come out and they—and [King] told me that's how they made the home-made shank out of the pen.

King told Officer Ford that this was the type of weapon used by Defendant to stab him. Officer Ford described King's wound as "not a wound that was just basically used by a pen, . . . it wasn't just circular. It . . . had an indention to where it was something flat and then it went outward, whereas a pen, you would have, like, a puncture wound and that was the difference between the two."

Both of King's wounds were about one-eighth to one-quarter of an inch wide and less than an inch long. King was taken to the infirmary after the altercation, where both wounds were cleaned and bandaged. Neither wound required stitches.

Defendant did not testify. Rodney Crite (Crite), a defense witness, testified that King and Defendant argued, and then Foust swung at King to start the physical altercation. When asked if Defendant stabbed King with a shank, Crite responded: "I can't say that if it was a shank or what." William H. Anderson, another defense witness, testified that King "advanced on [Defendant]" to start the fight. Both defense witnesses testified either that they did not "see" or could not "recall" a shank.

Defendant was indicted for "us[ing] a homemade knife called a shank, a deadly weapon, to assault and inflict serious injury upon [King] by stabbing the victim in the shoulder area causing a stab wound which required medical treatment." At the close of all the evidence, Defendant requested jury instructions on self-defense and on the lesser included offense of simple assault. The trial court denied both requests. During its charge to the jury, the trial court described the weapon used by Defendant to stab King as "the shank, the home-made knife or the pen with the razor in it." Defendant objected to this description, but had trouble articulating a basis for this objection, and the trial court did not change the jury charge. The jury acquitted Defendant of assault with a deadly weapon inflicting serious injury,

but found him guilty of the lesser included offense of assault with a deadly weapon.

The issues are whether: (I) the evidence supported a jury instruction on self-defense; and (II) the evidence supported a jury instruction on the lesser included offense of simple assault.

I

[1] A defendant is entitled to a jury instruction on self-defense when there is evidence from which the jury could infer that he acted in self-defense. *State v. Marsh*, 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977). The right of self-defense is only available, however, to "a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it and gives notice to his adversary that he has done so." *Id.* Furthermore, when confronted with a nonfelonious assault, a party is required to retreat "if there is any way of escape open to him." *State v. Brown*, 117 N.C. App. 239, 241, 450 S.E.2d 538, 540 (1994) (quoting *State v. Pearson*, 288 N.C. 34, 39, 215 S.E.2d 598, 602-03 (1975)), *cert. denied*, 339 N.C. 616, 454 S.E.2d 259 *and* 340 N.C. 115, 456 S.E.2d 320 (1995). We consider the facts in the light most favorable to Defendant in determining whether the trial court should have instructed the jury on self-defense. *State v. Moore*, 111 N.C. App. 649, 654, 432 S.E.2d 887, 889 (1993).

In this case, the evidence reveals that Defendant aggressively and willingly entered the fight and did not withdraw. King was fighting with Foust when Defendant stabbed King in the shoulder with the shank. Even assuming that Defendant did not initiate the fight, he is not entitled to a charge on self-defense. All the evidence reveals that King was unarmed. Regardless of who started the altercation, therefore, Defendant was required to retreat from the nonfelonious assault rather than escalate the incident through the use of a weapon. Defendant could have retreated by leaving the day room (as he had done earlier in the evening), or he could have summoned the available officers. The trial court therefore did not err in refusing to instruct the jury on self-defense.

II

[2] Defendant contends that Foust's testimony contradicted the State's evidence that Defendant stabbed King with a deadly weapon,

thereby requiring submission of the lesser included offense of simple assault. We disagree.

Instructions on a lesser included offense are required only when there is conflicting evidence as to a crucial element of the offense charged, *State v. Johnson*, 317 N.C. 417, 436, 347 S.E.2d 7, 18 (1986), and the evidence supports the elements of the lesser included offense, *State v. Williams*, 314 N.C. 337, 351, 333 S.E.2d 708, 718 (1985).

The evidence in this case undisputedly reveals that King received stab wounds during the altercation with Defendant. Foust's testimony did not conflict with the State's evidence that Defendant stabbed King with a shank. Foust testified: "I just seen a pen. *Whether it was a piece of metal or a piece of anything on it, I didn't see.* I seen a ink pen." (Emphasis added). Foust never testified that Defendant used an *unaltered* ballpoint pen to stab King; instead, Foust testified that a ballpoint pen was all that he saw. Foust's testimony, read in its entirety, supports rather than contradicts the State's case that Defendant stabbed King with a shank *made from* a ballpoint pen. The record therefore reveals no conflicting evidence on this element of the State's case which would support submission of the lesser included offense of simple assault.

Furthermore, a shank made by attaching a razor blade to a ballpoint pen would properly be denominated a deadly weapon as a matter of law when used to stab another person, because it "is likely to produce death or great bodily harm under the[se] circumstances." *State v. Randolph*, 228 N.C. 228, 232, 45 S.E.2d 132, 135 (1947).

**[3]** Defendant also contends that the trial court erred in describing the weapon used by Defendant as "the shank, the homemade knife or the pen with the razor in it" during the jury instructions. Having found that the State's evidence as to the weapon used by Defendant to stab King was uncontradicted in the record, we cannot say that this description constitutes an error.

No error.

Judges JOHN and MARTIN, Mark D., concur.